## STALE RIGHTS OF BENEFICIARIES UNDER AN OLD TRUST DEED.

Common Pleas Court of Cuyahoga County.

LORENZO D. BROCKWAY V. ADELINE WARREN ET AL.

Decided, June, 1910.

*Property Conveyed in Trust—Explanatory Paper, Contemporaneously
Issued, Lost—Reconveyance by Trustee to Grantor—Survival of
Rights in Heirs of the Cestui Que Trustent—Stale Rights—Statute
of Limitations.*

1. A trust contingent upon the arrival of the beneficiaries at their
   majority is terminated by the deaths of the beneficiaries before
   reaching their majority.
2. Where property was conveyed in trust by a father to one of his
   sons in 1863, and in 1865 was reconveyed by the son to his father,
   and in 1871 one-half of the same parcel was again conveyed by
   the father to the same son but in fee simple, and the son at once
   went upon the property and has remained in possession ever since,
   it is too late forty years thereafter for heirs of the *cestui que trust*
   under the first deed to assert title under said deed.

*Patterson & Nieding* and *E. J. Thobaben,* for plaintiff.
*Bentley & Arnos* and *E. S. Meyer,* contra.

SCHWAN, J.

On September 15th, 1863, one Green Brockway, the owner of a
163-acre farm, executed and delivered to one of his sons, Lorenzo

D. Brockway, the plaintiff herein, a deed of said 163 acres, which deed is of the following tenor (omitting some merely formal parts), viz.:

"I, Green Brockway, in consideration of three hundred dollars ($300.00), received to my full satisfaction of Lorenzo D. Brockway, do grant, bargain, sell and confirm unto him, the said Lorenzo D. Brockway, the following described tract of land (description of land). The condition of this deed is such, that whereas the said Lorenzo D. Brockway, being over the age of twenty-one years, and Henry Brockway and Enoch Brockway are minors, and under the age of majority, sons of the said Green Brockway, it is understood that this deed shall convey to the said Lorenzo D. Brockway all the above described lands, one-third to the said Lorenzo D. Brockway, as an indefeasible estate in fee simple, subject only to a life lease of the said Green Brockway, and the other two-thirds of said lands to be held in trust to said McHenry Brockway and Enoch Brockway, which shall be conveyed to them on their becoming of age, but shall be subject to said life lease of said Green Brockway. To have and to hold the above granted premises with the appurtenance thereunto belonging unto him, the said Lorenzo D. Brockway, his heirs and assigns forever, to his and their proper use and behoof."

This deed was shortly thereafter left for record with the recorder of Cuyahoga county and duly recorded in Volume 126 at page 40.

Contemporaneously with said deed, it is claimed by plaintiff, there was executed by him to his father, the grantor, a paper-writing, obligating him to re-convey said premises to his father in the event of the death of both or either of his sons, McHenry or Enoch, before they arrived at the age of majority.

This document was not put in evidence for the reason that it had become lost, as claimed by plaintiff, but oral testimony was introduced as to its execution and contents. And while such testimony is not as satisfactory as primary evidence—the document itself—yet I am not warranted in disregarding it, especially in the light of the conduct of the parties to it.

At the time of the execution of said deed, September, 1863, the other two sons of the grantor, McHenry Brockway and Enoch Brockway, mentioned in said deed, had enlisted and were doing

duty as soldiers in the late Civil War, and both found their death while so engaged and before either of them had arrived at the age of majority.

Sometime in the year 1865, and after the death of said two minor sons, McHenry and Enoch, Lorenzo D. Brockway re-conveyed said 163 acres to his grantor father, as he testifies, at the request of his father, and in obedience to the terms and conditions of the original conveyance to him as set forth in the lost document. Upon the re-conveyance to his father, he removed from the farm and the father again took sole possession and occupied said farm until 1871.

On November 20th, 1871, the father divided said farm, deeding the north half of said 163 acres to the plaintiff and the south half to another son. The plaintiff within a few days took possession of his half of said farm, moved on to it, and thereafter made it his home and has been in the sole possession of it ever since. All the deeds of conveyance above mentioned were filed for record and were all properly recorded.

In 1875 all of the heirs at law of Green Brockway (they being at the same time all the heirs at law of his deceased sons McHenry and Enoch), joined in an action to set aside the deed of November 20th, 1871, to this plaintiff, on the ground of fraud and undue influence, and sought to oust plaintiff from the possession and ownership of said land. This suit never came to trial and was dismissed for want of prosecution early in 1878.

In January, 1909, the plaintiff brought this action to quiet his title against the heirs at law of said deceased McHenry and Enoch Brockway, founding his right of action on the right of possession and title to said lands by the deed of November 20th, 1871, and his possession of said premises ever since.

The defendants admit the execution and delivery of said deed and plaintiff's possession of said premises since 1871, but claim that they, as heirs at law of the deceased brothers, McHenry and Enoch, have an equitable estate in said premises by virtue of the deed of 1863; that said deed conveyed a vested equitable estate in said brothers, and that this estate passed to them as their heirs; that the plaintiff took title to two-thirds of said farm wholly and solely in trust for the deceased brothers and their

heirs and that the trust so created by the deed of 1863 is executory, continuous and subsisting, and that the plaintiff should be compelled to execute it by conveying the claimed vested equitable interests of the deceased brothers to their successors, these defendants; that plaintiff's re-conveyance to his father in 1865, did not and could not affect their equitable interests in said premises, and that his possession, so far as their interests are concerned, is and must be held to be that of a trustee for their benefit.

To this claim the plaintiff replies as follows, viz.:

"First. The deed in question did not state the full terms of the trust, but that a paper writing made coincident with the execution and delivery of the deed of 1863 by plaintiff and his wife defined the terms of the trust upon points where the deed was ambiguous, and that the trust so created by these two papers was fully performed by the conveyance of 1865 back to the creator of the trust.

"Second. That the deed of 1863 created no vested estate in Enoch and McHenry Brockway, but did create a contingent interest which might or might not vest, dependent upon whether the beneficiaries did or did not arrive at the age of majority in life, but which reverted to the grantor upon the non-happening of such contingent event.

"Third. That the interest thus created did not, by its terms, survive the beneficiaries as there were no words of perpetuity, and that therefore the heirs of the beneficiaries could have no right of succession in any interest thus created.

"Fourth. That if there were a trust created which survived the beneficiaries, a right of action for the enforcement of the trust accrued when Enoch and McHenry Brockway would have arrived at the age of majority, which time was more than forty-two years ago. In such case the rule that equity will refuse stale demands would apply. Where a party is guilty of laches in prosecuting his title for such length of time as would bar him if his title were solely at law, a court of equity would refuse him its aid.

"Fifth. That plaintiff by the deed back to Green Brockway in 1865, and by taking a new, independent title by the deed of 1871, openly and notoriously disavowed the trust and thus terminated any trust which may have existed, whether the same was a continuing trust or otherwise, which disclaimer and disavowal was brought home to the knowledge of the heirs of said

Enoch and McHenry Brockway by plaintiff's actions and conduct; and that, having occupied the premises in question adversely to the beneficiaries for more than thirty-five years after such disavowal, the statutes of limitation runs as against them or any persons claiming under then, and therefore the answering defendants are precluded from asserting their claims."

With respect to the first position of the plaintiff, the written obligation executed contemporaneously with the trust deed, I have already intimated that while the testimony with respect to it, in the absence of the document itself, is not absolutely convincing, yet I can not arbitrarily disregard the testimony with respect to it; and the conduct of Lorenzo in deeding back said property upon demand of his father when satisfied of the death of the two minor sons, and the father's resuming the title and possession of the farm and holding it for six years thereafter, lends some support to the belief that such a document was in fact executed.

That several writings may be construed together for the purpose of ascertaining the terms of a trust is abundantly established by the authorities. 22 O. S., 62; 20 O. S., 478; 44 O. S., 287.

As to plaintiff's second proposition, that the deed of 1863 gave McHenry and Enoch no vested rights, but only a contingent right, dependent upon their arriving at the age of majority, I hold with the plaintiff, and think the authorities in plaintiff's brief absolutely sustain that position.

As to the third proposition, that, where in a conveyance of trust the word "heirs" is omitted, grantee takes only an estate for life, and at his death the estate reverts to grantor; this, I think, is sound.

Perry on Trusts, 357, says:

"It is a fundamental proposition that equitable estates are governed by the same principles or rules as legal estates; otherwise inextricable confusion would follow."

"An equitable fee may be created in a deed without the word 'heirs' if the words used in their popular sense are equivalent to the technical words, or if the intention is sufficiently clear."

In the trust deed in controversy, the grantor uses this language:

"This deed shall convey to the said Lorenzo D. Brockway all of the above described lands, one-third to the said Lorenzo D. Brockway as an indefeasible estate in fee simple, subject only to a life lease of the said Green Brockway, and the other two-thirds of said lands to be held in trust to said McHenry Brockway and Enoch Brockway, which shall be conveyed to them on their becoming of age."

Can it be said in view of this language that grantor's intention to give the two minor sons an estate in fee simple is "sufficiently clear"?

He expressly given Lorenzo "an indefeasible estate in fee simple" to his share of the property; why did he not make use of the same words with respect to the others?

In *Ford* v. *Johnson*, 41 O. S., 366, the grant was "unto the said Charles Cline and to his lawful issue, to go to his surviving brothers, their heirs and assigns." The habencum clause was, "unto the said Charles Cline and to his lawful issue, to the only proper use of the said Charles Cline and his lawful issue (as above mentioned) forever." *Held:* that Cline took only a life estate. On page 367 the court says, "the elementary authorities uniformly hold that the word 'heirs' is indispensible to the creation by deed of an estate tail or in fee simple; though it is otherwise in a will. This requirement is technical; but it has always been a rule of property in this state, and must, for manifest reasons, be upheld."

Plaintiff's fourth proposition, "that equity will refuse relief to stale demands; and where a party is guilty of laches in prosecuting his title for such a length of time as would bar him, if his title were solely at law, a court of equity will refuse him its aid," is well supported by the authorities cited in plaintiff's brief. 10 O. S., 498, page 503; 28 O. S., 568; 1 O. S., 478, 496.

The fifth proposition, also, "that, where a trustee, by words or acts, openly disavows and denies the trust, claiming the property as his own, independent of any trust, and these facts are brought home to the knowledge of the *cestuis que trustent* or their heirs, the statute of limitations thereupon begins to run against any and all claims of the beneficiaries or their heirs," is supported by many authorities, among which is the case of *Larwill* v. *Burke*.

reported in 19 C. C. Rep., 449-478, and affirmed by the Supreme Court.

The sixth paragraph of the syllabus reads:

"When a trustee denies the trust, and to the *cestui que trust* claims the trust property by a title independent of the trust, and adversely to the claim of the beneficiary, the statute of limitations will run in his favor."

We agree with defendants' counsel, that "it is a well settled rule in equity, as to continuing and subsisting trusts, that the statute of limitations does not apply to them"; but as is said by our Supreme Court in *Carpenter* v. *Canal Co.*, 35 O. S., at page 317, when quoting the above rule, "but where a trustee denies the right, lapse of time may constitute a bar."

In the case of *Veazie* v. *McGugin*, 40 O. S., 365, the court, on pages 375 and 376 says on this subject:

"Upon an examination of the cases cited by counsel for plaintiff in error, we find that they plainly recognize two very different classes of cases: first, as between trustee and *cestui que trust;* and second, as between a third party and the trustee or his beneficiary. In the former the statute will not begin to run until an unmistaken disclaimer of the trust is known to a beneficiary competent to sue. In the latter the statute begins and runs in the ordinary manner."

In *Williams* v. *First Pres. Soc.*, 1 O. S., 478, the court in the tenth paragraph of the syllabus, says:

"Although it is true as a general rule, that as between trustee and *cestui que trust*, lapse of time is no bar, yet it is equally true, that where the former, with the knowledge of the latter, disclaims the trust, either expressly or by acts that necessarily imply a disclaimer, and an unbroken possession follows in the trustee, or those claiming under him, for a period equal to that prescribed in the statute of limitations to constitute a bar, such lapse of time under such circumstances may be relied upon as a defense." See also pages 478, 492, 506 and 507.

The action brought in 1875 by all the heirs of Green Brockway (who were also all the heirs of the deceased McHenry and Enoch) against the plaintiff, shows that they had notice of plaintiff's adverse possession.

It is also a well settled doctrine that the record of a deed is constructive notice to those who claim through or under the grantor who executed such deed. 6 O. S., 580, see page 583; 101 U. S., 135; 158 U. S., 172.

These defendants claim under a deed from Green Brockway, but say they did not know of the creation of the trust, and therefore the statute should not run against them; but they admit that the deed from Lorenzo to his father re-conveying the farm to him was duly recorded; they admit that six years afterward the father, Green Brockway, again conveyed half of said farm to plaintiff and that this deed was at once recorded; they admit that all the heirs of Green Brockway, who were also all the heirs of the two deceased brothers under whom they claim, brought action in 1875 to oust this plaintiff out of possession and deprive him of the title to said premises.

In my opinion, then, the plaintiff is entitled to a decree upon two grounds:

First. That the trust created by the deed of 1863 is not a "continuing and subsisting trust"; it was contingent upon the arrival of the beneficiaries at the age of majority and was terminated by the death of the beneficiaries before they arrived at that age.

That Green Brockway himself thus interpreted his deed of 1863 is conclusively proven, in my opinion, in his taking back from Lorenzo, presumably at his own request, the title to the land in 1865, when he learned and was satisfied of the death of his two sons, Enoch and McHenry, and that this conveyance by Lorenzo back to his father was a *bona fide* transaction untainted by fraud or suspicious circumstances is evidenced by the fact that Green Brockway held title to this land for six years before he finally and definitely divided it between his two surviving sons.

Taking the view of defendants' counsel, that the terms of a trust should be given the effect intended by the maker of the trust, I am of the opinion that the evidence in this case is clear and convincing that Green Brockway himself intended that the trust should terminate in case his sons Enoch and McHenry did not arrive at the age of twenty-one years. If this was not his intention, then why did he take back the title to this land im-

mediately upon the death of his two sons, the beneficiaries of this trust? And there is absolutely no evidence of any fraud or of any undue influence having been exercised by this plaintiff upon his father. Whether or not the deed of 1863 was accompanied by a written obligation on the part of Lorenzo to re-convey to his father, in the event of the death of Enoch and McHenry before arriving at the age of twenty-one years, is, in my opinion, of small importance. The fact remains that in 1865, by a good and sufficient deed, duly executed and recorded, the old gentleman again acquired the legal title to this land, thus declaring and publishing that he never intended a continuing trust, never intended to convey to Enoch or McHenry a title in fee simple, but that he intended to and did execute a contingent trust, that if Enoch and McHenry arrived at the age of twenty-one, then they were to be made the owners of the land in question.

Finding thus, that the trust was legally and rightfully terminated, it may be considered superfluous to state the other ground upon which I find the plaintiff entitled to a decree. But, granting that the trust was a continuing and subsisting trust, in my opinion the plaintiff would still be entitled to a decree, for the reason that the claims now made by the heirs of Enoch and McHenry are barred, and must be considered by the court as stale and of no virtue. The fact that Green Brockway and Lorenzo both, in 1865, published and declared that the trust created in 1863 was terminated, by putting on record the deed of 1865, and the further fact that this same property was in 1871 deeded by Green Brockway to his two surviving sons, coupled with the fact that these sons have ever since held this land in open and notorious possession, undisputed for more than a generation, proves conclusively that, if the claimants ever had any rights under the deed of 1863, they have forfeited and lost them by sleeping on their rights, by being guilty of laches. The heirs of Enoch and McHenry, for the greater part, have always lived in this very community; knew of the fact that the plaintiff was in possession of the land described in the petition, and that he held himself out as the owner of it. In 1875 they made an effort to oust him from possession by filing a petition in the court of this county—all the heirs of Green Brockway join in

this action, and then for want of prosecution the cause is dismissed. It clearly appears then, that all the heirs of Green Brockway (these include the heirs of Enoch and McHenry) and either actual or constructive notice of the act of Green and Lorenzo B. in terminating or attempting to terminate the trust by the conveyance of 1871 by Green to his two surviving sons of this property, and of the open, continuous and notorious possession by Lorenzo of the property in question for over·a generation.

Plaintiff's counsel may draw up a decree in accordance with the decision. The defendants except and give notice of appeal. Bond fixed at $100.